**TARTER KRINSKY & DROGIN LLP**
*Proposed Counsel to Deborah J. Piazza, as*
*Chapter 7 Trustee*
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000
Deborah J. Piazza, Esq.
Jill Makower, Esq.
Scott S. Markowitz, Esq.
dpiazza@tarterkrinsky.com
jmakower@tarterkrinsky.com
smarkowitz@tarterkrinsky.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:                                          :
                                                :   Chapter 7
NICHOLAS J. SANDS,                              :
                                                :   Case No.: 19-12819 (CGM)
                                                :
                    Debtor.                     :
------------------------------------------------------------x

**CHAPTER 7 TRUSTEE'S OPPOSITION TO**
**(I) DEBTOR'S MOTION TO CONVERT CASE TO CHAPTER 11, AND (II)**
**JPMORGAN CHASE BANK'S MOTION TO LIFT THE AUTOMATIC STAY**

Deborah J. Piazza, as Chapter 7 trustee (the "Trustee") of the debtor, Nicholas J. Sands (the "Debtor"), by the Trustee's proposed counsel, Tarter Krinsky & Drogin LLP, as and for her opposition to the Debtor's motion (the "Conversion Motion") to convert this case to one under Chapter 11 of title 11, United States Code ("Bankruptcy Code"), respectfully states as follows:

**PRELIMINARY STATEMENT**

1.  According to the Debtor's original Schedules belatedly filed on May 9, 2020 (over 8 months after Debtor's filing of this case under Chapter 13) [ECF No. 47], the Debtor owns three properties: (a) 30 East 76th Street, Apartment 7A, New York, New York 10021

("Unit 7A"); (b) 30 East 76th Street, Apartment 7B, New York, New York 10021 ("Unit 7B"); and (c) a single family home located at 5540 W. Scarington Court, Orlando, Florida 32821-7936 (the "Florida Property").  The Debtor's Schedules further indicate the Debtor had no income and no interest in any business as of the filing of this case.  The Debtor's Statement of Financial Affairs, belatedly filed on May 9, 2020 (over 8 months after Debtor's filing of this case under Chapter 13) [ECF No. 48], indicate the Debtor earned no income in 2019 or 2020 from employment or operation of a business.

2. The Debtor seeks to convert his case to one under Chapter 11 pursuant to Bankruptcy Code sections 706(b) and 105(a), proposing to liquidate Units 7A and 7B (which are adjacent apartments in the same Manhattan building) under a Chapter 11 plan, and to retain the Florida Property, which is unencumbered.

3. The Debtor filed this case under Chapter 13 on September 3, 2019 (the "Petition Date") to thwart the condominium board's foreclosures of units 7A and 7B. Indeed, scheduled to be heard in state court on the Petition Date was the condominium board's motion for summary judgment in its foreclosure action with respect to Unit 7B (for unpaid common charges), and scheduled for the following day (September 4, 2019) was the condominium board's foreclosure sale of Unit 7A. The Debtor also filed his Chapter 13 petition to hinder the foreclosures by the mortgagees of Unit 7A and Unit 7B.

4. As demonstrated in the opposition (the "Board's Opposition") to the Debtor's Conversion Motion filed by The Board of Managers of the 30 East 76th Street Condo Condominium (the "Board") [ECF No. 59], and as further demonstrated below, conversion of the Debtor's Chapter 7 case to Chapter 11 would be highly inappropriate. The Debtor's Conversion Motion should be denied for numerous reasons including (a) the Debtor is an individual who engages in no business and does not seek to restructure his debts, but rather, to sell Units 7A and

7B, which the Trustee is better suited to do, (b) the Debtor, admittedly, has no income and no ability to pay his expenses, (c) the Debtor has engaged in bad faith conduct and deliberately repeatedly frustrated his secured creditors (the mortgagees and the Board) over the past few years and in this case, and (d) denial of the Conversion Motion is in the best interest of creditors, as the Trustee would quickly move to liquidate Units 7A and 7B and would be able to administer other assets of the Debtor for the benefit of creditors.

5. As set forth below, there may be sufficient equity in Unit 7A to warrant the sale of Unit 7A by the Trustee. Accordingly, the Trustee believes the lift stay motion (the "Chase Lift Stay Motion") filed by JPMorgan Chase Bank, National Association ("Chase"), which is predicated on lack of adequate protection, should be denied, or at least adjourned, so that the Trustee may seek to market Units 7A and 7B both individually and jointly as one combined apartment, for the benefit of creditors.

## BACKGROUND

### A. General

6. The background of the Debtor's case and the Debtor's obstructionist conduct over the past several years and in this case is well detailed in the Board's Opposition to the Debtor's Conversion Motion.

### B. Procedural History of Debtor's Case

7. The Debtor filed a voluntary "bare bones" Chapter 13 petition on September 3, 2019, *pro se*. The Debtor did not file any Schedules or Statement of Financial Affairs until <u>over eight (8) months later</u> on May 9, 2020.

8. On September 24, 2019, the Board filed a motion (the "Board's Motion") to convert the Debtor's case to Chapter 7 based on Debtor's bad faith and other grounds.

9. On December 19, 2019, the Chapter 13 trustee filed a motion [ECF No. 20] to

dismiss the Debtor's case based on, among other things, Debtor's failures to comply with Bankruptcy Code section 521(a)(1) and Bankruptcy Rule 1007(b) in that the following required documents had not been filed:

   a. official Form B22C (CMI), Statement of Monthly Income and Disposable Income pursuant to 11 U.S.C. §521(a)(1)(B)(v);
   b. complete schedules of assets and liabilities pursuant to 11 U.S.C. §521(a)(1)(B)(i);
   c. schedules I and J pursuant to 11 U.S.C. §521(a)(1)(B)(ii);
   d. statement of Financial Affairs pursuant to 11 U.S.C. §521(a)(1)(B)(iii); and
   e. copies of all payment advices or other evidence of payment for last 60 days before the date of the filing of the petition by the Debtor from any employer of the Debtor pursuant to 11 U.S.C. §521(a)(1)(B)(iv)

and based on the Debtor's failures to:

   a. file a Credit Counseling Certificate as required by 11 U.S.C. §521(b)(1);
   b. file a Chapter 13 Plan, as required by 11 U.S.C. §1321 and Fed. R. Bankr. P. 3015(b);
   c. appear and be examined at the Section 341 Meeting of Creditors as required by 11 U.S.C. §343;
   d. failed to commence making Chapter 13 plan payments to the Trustee, as required by 11 U.S.C. §1326(a)(1).

See ECF No 20.

10. By order entered on February 10, 2020, the Court converted this case from Chapter 13 to Chapter 7. Deborah J. Piazza was appointed the Chapter 7 Trustee shortly thereafter, subsequently became permanent trustee by operation of law, and continues to act in that capacity.

**C. Unit 7A**

11. The Debtor is the sole owner of Unit 7A. According to the broker letter dated April 7, 2020 (the "Brown Harris Letter") of Debtor's intended broker Brown Harris Stevens ("Brown Harris"), annexed hereto as **Exhibit "A,"** once the real estate market bounces back

from COVID-19, a price of $1.7 million is a viable and attainable price for Unit 7A.[1]

12. The secured debts on Unit 7A are currently approximately $1.53 million, consisting of approximately $1,166,565 owed on Chase's mortgage[2] and approximately $360,000.00 owed to the Board.[3]

13. The Debtor filed his case to stay the Board's foreclosure sale of unit 7A which was scheduled for September 4, 2019, the day after the bankruptcy petition was filed.

D. **Unit 7B**

14. The Debtor is the sole owner of Unit 7B. According to the Brown Harris Letter, once the real estate market bounces back from COVID-19, a price of $2.2 million is a viable and attainable price for Unit 7B. Based on the information provided to the Trustee by the Unit 7B mortgagee and the Board, the secured debts on Unit 7B currently total approximately $1,352,000, consisting of approximately $1,153,655 owed on the mortgage held by U.S. Bank N.A.,[4] approximately $143,000 owed to the Board, and $55,556 owed to New York State as of July 11, 2019.

15. Upon information and belief, Unit 7B is currently in foreclosure with its mortgagee, U.S. Bank N.A., under index # 810068/2010, and summary judgment was granted in

---

[1] According to Chase's appraisal, the fair market value of Unit 7A as of January 29, 2020 is $1,350,000.

[2] Chase filed claim no. 5-1 against the Debtor asserting a secured claim in the amount of $1,121,664.67. The Chase Lift Stay Motion returnable on June 18, 2020, states Chase is owed $1,153,523.84 as of February 24, 2020 and that the Debtor's delinquencies under Chase's loan total $102,436.47 as of February 1, 2020. Chase had a foreclosure action pending against the Debtor under index # 850074/14 in Supreme Court, New York County and obtained a foreclosure judgment. Upon information and belief, the action was settled by a loan modification and the Debtor is currently in default of that mortgage, as modified. According to the Chase Lift Stay Motion, the Debtor has breached his obligations under the mortgage by failing to pay the installment due on November 1, 2018 and for each month thereafter. Accordingly, Chase contends it is entitled to relief from stay under Bankruptcy Code section 362(d)(1) based on lack of adequate protection for Chase's interest in Unit 7A.

[3] According to the Board's Opposition, Unit 7A is in arrears with the Board in the amount of $316, 363.76 as of August 28, 2019. The Board has advised the Trustee that the debt is currently approximately $360,000.00.

[4] U.S. Bank NA filed a proof of claim, claim no. 4-1 asserting a secured claim in the amount of $1,124,157.64, based on a mortgage against Unit 7B.

favor of the mortgagee on or about June 14, 2019.

16. According to the Board's Opposition, Unit 7B is also currently in foreclosure with the Board for unpaid common charges under index # 151864/15 in Supreme Court, New York County. The Board moved for summary judgment and oral argument was scheduled for September 3, 2019 at 2:30 p.m. The Debtor filed bankruptcy on 12:16 p.m. on that day so the action was stayed.

### E. The Florida Property

17. As shown on Schedule A/B, the Debtor is the fee owner of the Florida Property. The Debtor asserts the Florida Property has a value of $1.2 million and that there are no liens against it.

## I. THE DEBTOR'S CONVERSION MOTION SHOULD BE DENIED

### A. Applicable Law

18. The Debtor has moved for conversion to Chapter 11 under Bankruptcy Code section 706(b), which provides: "On request of a party in interest and after notice and a hearing, the court may convert a case [under Chapter 7] to a case under Chapter 11 of this title at any time." 11 U.S.C. § 706(b).[5]

19. The plain language of Section 706(b) states that the court "may" convert, as opposed to "shall" convert, conveying that the decision to convert remains within the sound discretion of the court. In re First Connecticut Consulting Group, Inc., 579 B.R. 673, 682 (D. Ct 2018). The legislative history of Section 706(b) reaffirms the text's explicit grant of discretion: "The decision whether to convert is left in the sound discretion of the court, based on what will most inure to the benefit of all parties in interest." H.R.Rep. No. 595, 95th Cong., 1st Sess. at

---

[5] Notably, the Debtor is not able to convert his case to Chapter 11 under Bankruptcy Code section 706(a), due to the previous conversion of this case from Chapter 13 to Chapter 7. See 11 U.S.C. § 706(a).

380 (1977), as reprinted in 1978 U.S.C.C.A.N. 5963; S.Rep. No. 989, 95th Cong.2d Sess. at 94 *683 (1978), as reprinted in 1978 U.S.C.C.A.N. 5787. See First Connecticut Consulting Group, Inc., 579 B.R. at 683.

20. "Section 706(b) does not provide guidance regarding the factors a court should consider." In re Schlehuber, 489 B.R. 570, 573 (8th Cir. BAP 2013), aff'd, 558 Fed. Appx. 715 (8th Cir. 2014). Therefore, in determining whether to convert a case under § 706(b), courts should consider anything relevant that would further the goals of the Bankruptcy Code. First Connecticut Consulting Group, Inc., 579 B.R. at 683; Proudfoot Consulting Co. v. Gordon (In re Gordon), 465 B.R. 683, 692 (Bankr. N.D. Ga. 2012); see also In re Decker, 535 B.R. 828, 839 (Bankr. D. Alaska 2015) ("[C]ourts may consider a multitude of factors, depending upon the circumstances of each case, to assess the benefits of conversion to all parties.").

21. Courts have relied upon various factors in determining whether a Section 706(b) conversion would be appropriate, including: "(1) the debtor's ability to repay debt; (2) the absence of immediate grounds for reconversion; (3) the likelihood of confirmation of a Chapter 11 plan; and (4) whether the parties in interest would benefit from conversion." First Connecticut Consulting Group, Inc., 579 B.R. at 683; Decker v. Office of the United States Tr., 548 B.R. 813, 817 (D. Alaska 2015); In re Hardigan, 517 B.R. 374, 383 (S.D. Ga. 2014); see also Schlehuber, 489 B.R. at 574 (affirming bankruptcy court's reliance on ability to pay and potential for confirmation). As demonstrated below, all of the foregoing factors militate against conversion of this case to Chapter 11.

22. "Where immediate grounds for reconversion or dismissal under Section 1112(b) exist… 'conversion from Chapter 7 under § 706(b) would be a futile and wasted act.'" First Connecticut Consulting Group, Inc., 579 B.R. at 683 (quoting In re Ryan, 267 B.R. 635, 638 (Bankr. N.D. Iowa 2001)). As the Supreme Court reasoned in Marrama, "the broad authority

granted to bankruptcy judges to take any action that is necessary or appropriate 'to prevent an abuse of process' described in § 105(a) of the Code, is surely adequate to authorize an immediate denial of a motion to convert filed under § 706 in lieu of a conversion order that merely postpones the allowance of equivalent relief and may provide a debtor with an opportunity to take action prejudicial to creditors." Marrama, 549 U.S. at 375, 127 S.Ct. 1105.

23. Although Marrama involved a dishonest chapter 7 debtor's eligibility for chapter 13 relief, it has broader implications. Marrama suggests that if "cause" exists to convert or dismiss a hypothetical chapter 11 case, the chapter 7 debtor seeking to convert to chapter 11 is ineligible for relief under that chapter within the meaning of § 706(d). In re Euro-Am. Lodging Corp., 365 B.R. 421, 425 (Bankr. S.D.N.Y. 2007). As demonstrated by the Board's Opposition, and as further shown below, if this case were converted to Chapter 11, cause would exist to convert it based on Debtor's bad faith and the other factors discussed herein.

B. **The Relevant Factors Militate Against Conversion To Chapter 11**

1. **The Debtor's Inability to Pay his Debts**

24. The Debtor, by his own admission, has little or no cash flow. On his Schedule I he lists zero income. It is undeniable the Debtor can't meet his current expenses. The Debtor's inability to pay his debts weighs heavily against conversion of this case to Chapter 11.

2. **The Debtor Is Not Engaged In Business And Does Not Seek To Restructure His Debts**

25. The Debtor is engaged in no business and has no employees. The Debtor does not seek to restructure any debts. The instant case is not one involving a viable, operating business whose greatest value rests in its continued operation. Instead, the Debtor's case involves a debtor who is an individual not engaged in business, with no income, who claims he desires to be in Chapter 11 only to sell his two of his three properties. Conversion of this case would not serve

any legitimate reorganizational purpose and would permit the Debtor to continue to act contrary to the purposes of the Bankruptcy Code, to the continued severe detriment to his (primarily secured) creditors.

### 3. The Chapter 7 Trustee Would be Better Suited to Administer Estate Assets

26. The Debtor proposes his entire Chapter 11 case would depend on his selling of his two Manhattan properties. The Debtor has proposed to hire professionals to sell Unit 7A and Unit 7B. However, as pointed out by the Board, the Debtor has attempted to do so over the three and five year periods the foreclosures were pending and was unsuccessful or didn't go through with any transactions. The Board and the Trustee, and presumably Chase, do not trust the Debtor to consummate a deal.

27. The Trustee would be better suited to liquidate Units 7A and 7B and other assets of the Debtor for the benefit of creditors. For example, the Trustee (unlike the Debtor) would be willing and able to liquidate the Debtor's unencumbered Florida Property, and other assets including the investment contract with Zirfriech USA, valued at $33,000 on Debtor's Schedules.

28. Assuming the values of the real estate referred to above, the Trustee expects she may be able to satisfy creditors in full in this case.

29. Based on the foregoing, this factor warrants denial of the Conversion Motion.

### 4. The Debtor's Bad Faith Conduct, Together With The Other Relevant Factors, Would Constitute Grounds for Reconversion from Chapter 11 to Chapter 7

30. As demonstrated by the Board's Opposition and the Board Motion filed in 2019, the Debtor filed this case in bad faith and to delay the legitimate efforts of the Board to enforce its rights against Units 7A and 7B. The Debtor filed his chapter 13 petition on the day scheduled for oral argument on the Board's motion for summary judgment as to Unit 7B and the day before

the Board's scheduled foreclosure sale of Unit 7A.

31. The Board's Opposition details the background of the Debtor's case and the Debtor's obstructionist conduct over the past several years, which has harmed the Debtor's mortgagees and the Board.

32. Based on the above, it is in the best interests of all creditors for the Debtor to remain in chapter 7.

33. As demonstrated above, all factors relevant to the determination of whether to grant the Debtor's Conversion Motion weigh heavily against conversion. Accordingly, the Debtor's Conversion Motion should be denied.

## II. THE CHASE LIFT STAY MOTION SHOULD BE DENIED

34. As shown above, there may be sufficient equity in Unit 7A to warrant the sale of Unit 7A by the Trustee. Accordingly, the Trustee believes the Chase Lift Stay Motion should be denied, or at least adjourned, so that the Trustee may seek to market Units 7A and 7B both individually and jointly as one combined apartment, for the benefit of creditors.

## CONCLUSION

35. For all of the foregoing reasons, the Debtor's Conversion Motion and the Chase Lift Stay Motion should be denied.

Dated: New York, New York
       June 11, 2020

**TARTER KRINSKY & DROGIN LLP**
*Proposed Counsel to the Chapter 7 Trustee*

By: /s/ Jill Makower
    Deborah J. Piazza, Esq.
    Jill Makower, Esq.
    Scott S. Markowitz
    1350 Broadway, 11th Floor
    New York, New York 10018
    Phone: (212) 216-8000
    dpiazza@tarterkrinsky.com
    jmakower@tarterkrinsky.com
    smarkowitz@tarterkrinsky.com

**EXHIBIT A**



April 7, 2020

Mr. Nicholas Sands
30 East 76th Street
New York, NY 10021

Hi Nicholas,

As discussed, please see below for my opinion of value for 7A, 7B and 7AB:

Once the business opens up, and buyers are back in the market, which we hope to take place in the next 2-3 months, we believe the value of 7A, 7B and 7AB will return to where we left off in the late 2019 and the beginning of 2020 when we were seeing an increased activity level in Upper East Side residential market.

## 7A, 7B

The most compelling comps for 7A and 7B are:
https://resourcecdn.azureedge.net/reporthtml/70962341f5b9470697d5a27120be2262.html

- **40 East 78th Street, 7E**
  Sold for **$2,213,000** in December 2019. 2 bedroom, 2bathrroom, similar size 1,283 sqft.
- **40 East 78th Street, 9D**
  In contract for around **$2,200,000**. 2 bedroom, 2 bathroom, similar size 1,380 sqft
- **1080 Madison Avenue, 2A**
  Sold for **$2,107,500** in September 2019. 2 bedroom, 2 bathroom, similar size 1,350 sqft.

## 7AB

The most relevant comps for 7AB combination unit are:
https://resourcecdn.azureedge.net/reporthtml/9bc1cbd2fd1e400cbcd4136fbe21a008.html

- **30 East 85th Street, 9EF**
  Sold for **$4,837,500** in 2019. 4 bedroom, 4,5 bathrooms, similar size 2,225 sqft.
- **40 East 78th Street, 7HA**
  On the market for **$4,790,000**. 4 bedrooms, 4 bathrooms, similar size 2,549 sqft.



Brown Harris Stevens Residential Sales, LLC
445 Park Avenue, New York, NY 10022   Tel 212.906.9200

**BrownHarrisStevens.com**  NEW YORK CITY · HAMPTONS · PALM BEACH · MIAMI · WORLDWIDE

Based on the most relevant comps above, we firmly believe that 7A $1,700,00, 7B $2,200,000 and 7AB $3,900,000 are viable and attainable prices when NYC residential real estate market bounces back from COVID-2019 crisis. NYC residential real estate market (especially condominium market) demonstrated its resiliency many times in the past, and we are positive that we will come out strong this time as well.

Best Regards,
Masami

**MASAMI ISSEVER**
Licensed Real Estate Salesperson
Brown Harris Stevens Residential Sales, LLC
Partnering Worldwide

445 Park Avenue, New York, NY 10022
Direct: 212-712-1142
Cell: 917-327-2528
Email: missever@bhsusa.com
Click for my BIO
download my vcard
Member of the Real Estate Board of New York